UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DANTE PATTISON, | Case No.: 3:20-cv-00287-MMD-CSD |
| Plaintiff | **Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF No. 143 |
| BRIAN SANDOVAL, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 143, 143-1 to 143-9, sealed exhibits at ECF No. 145-1, errata at ECF Nos. 149-1 to 149-4.) Plaintiff filed a response. (ECF No. 181.) Defendants filed a reply. (ECF No. 184.)

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*)

The court screened Plaintiff's complaint and allowed him to proceed with an Eighth Amendment deliberate indifference to serious dental needs claim against defendants Sullivan, Vargas, Dr. Petersen, and a John Doe dentist when Plaintiff learned of his or her identity. This

claim is based on allegations that these Defendants knew of Plaintiff's dental issues and ongoing complaints he was not receiving dental treatment, but failed to provide him with adequate dental treatment. He was also allowed to proceed with a supervisory liability Eighth Amendment claim against defendants Sandoval, Baca, Dzurenda, Dr. Aranas, and Laxalt based on allegations that in 2016 or 2017, Vargas told them that NNCC created a policy to deny preventive dental care, and they failed to take any action.

Plaintiff was further allowed to proceed with the Eighth Amendment deliberate indifference to serious dental needs claim against Dr. Minev, Daniels, Sisolak, Russel, and Ford, for injunctive relief only to change NDOC's policy. Finally, Plaintiff was allowed to proceed with a retaliation claim against defendants Sullivan and Meza based on allegations he filed a grievance with evidence (four dental kites), and Sullivan and Meza purposefully destroyed the evidence to prevent Plaintiff from pursuing his claims. (ECF No. 6.)

Dr. Petersen passed away, and he has been dismissed from this action without prejudice. (ECF No. 79.) Dr. Benson has been substituted in place of the John Doe Dentist. (ECF No. 38.) Sullivan and Meza were voluntarily dismissed without prejudice. (ECF Nos. 177, 178.) Therefore, this action is proceeding with the Eighth Amendment deliberate indifference to dental care claim against Vargas and Dr. Benson, the supervisory liability claim against Sandoval, Baca, Dzurenda, Dr. Aranas, and Laxalt, and the claim for injunctive relief against Dr. Minev, Daniels, Sisolak, Russel, and Ford.

Insofar as the remaining claims are concerned, Defendants move for summary judgment, arguing: (1) Plaintiff's claims are barred by the statute of limitations; (2) Plaintiff's Eighth Amendment rights were not violated as he received adequate dental care; and (3) Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Statute of Limitations**

Section 1983 does not contain its own statute of limitations; therefore, federal courts borrow the statute of limitations for section 1983 claims applicable to personal injury claims in the forum state. *See Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and for section 1983 actions brought here, is two years. Nev. Rev. Stat. 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

"A statute of limitations begins to run on the date on which the plaintiff's claim 'accrues.'" *Pouncil*, 704 F.3d at 573 (citation omitted). "Federal law determines when a cause of action for a Section 1983 claim accrues and, hence, when the statute of limitations begins to run." *Id.* (citation omitted). Under federal law, a claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.* at 574 (citation omitted).

Federal courts apply the forum state's law regarding tolling, including equitable tolling, when not inconsistent with federal law, to civil rights claims filed under section 1983. *Johnson v. State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (citations omitted). Equitable tolling addresses not when the limitations period begins, but when it ends. *Soto v. Sweetman,* 882 F.3d 865, 871 (9th Cir. 2018). The statute of limitations is tolled while an inmate is actively exhausting administrative remedies. *See id.* at 875; *Brown v. Valoff*, 422 F.3d 926, 943-44 (9th Cir. 2005).

Plaintiff alleges his Eighth Amendment rights were violated beginning in 2015, but he did not file this lawsuit until May 15, 2020. Defendants argue that his claims are barred, at least

in part, by the two-year statute of limitations. The court must therefore address when Plaintiff's claims accrued and any equitable tolling that applies while he was exhausting administrative remedies.

Plaintiff filed grievance 20063093375 at the informal level on November 28, 2019, and he received a response to the second level grievance on April 6, 2020. (ECF No. 7 at 42-53.)[1] Therefore, Plaintiff is entitled to equitable tolling for 130 days. Given that Plaintiff filed his complaint on May 15, 2020, for Plaintiff to timely sue on any claims, they would have had to accrue on or after January 6, 2018 (two years and 130 days before he filed his complaint).

Plaintiff argues that he is entitled to proceed with his claims beginning in 2015 because of the continuing violations doctrine.

"The continuing violations doctrine functions as an exception to the discovery rule of accrual 'allowing a plaintiff to seek relief for events outside of the limitations period.'" *Bird v. State of Hawaii Dep't of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)). "Although the continuing violations doctrine is most frequently seen in the context of employment discrimination suits, [the Ninth Circuit has] held that the continuing violations doctrine also applies to § 1983 clams." *Id*. (citing *Knox*, 260 F.3d at 1013; *Cherosky v. Henderson*, 330 F.3d 1243, 1246 n. 3 (9th Cir. 2003)).

"The doctrine of continuing violations … is actually a conglomeration of several different ideas, … the essence of which is that when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id*. (citation and quotation marks omitted).

---

[1] Plaintiff also filed grievance 20063093928 on December 11, 2019, but it was found to be duplicative of grievance 20063093375. (ECF No. 7 at 29-40.)

The Ninth Circuit has recognized two applications of the continuing violations doctrine: "first, to a series of related acts, one or more of which falls within the limitations period, and second, to the maintenance of a discriminatory system both before and during [the limitations] period." *Id*. (citations and quotation marks omitted). The former has been referred to as the "serial acts" branch of the doctrine, and the latter has been referred to as the "systematic" branch of the doctrine. *Id*. at 747.

In 2002, the Supreme Court "limited the serial acts branch of the continuing violations doctrine." *Id*. at 746-47. The Court held that "discrete … acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges because [e]ach discrete … act starts a new clock for filing charges alleging the act." *Id*. at 747 (quotation marks omitted, citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). "The Court carved out one exception for hostile work environment claims, because '[s]uch claims are based on the cumulative effect of individual acts' that 'cannot be said to occur on any particular day.'" *Id*. at n. 7 (quoting *Morgan*, 536 U.S. at 115-17).

"Although *Morgan*[ ] applied Title VII … [the Ninth Circuit has] relied on *Morgan*[ ] to abrogate the serial acts branch of the continuing violations doctrine for § 1983 claims as well." *Id*. (citing *Carpinteria Farms, Ltd v. Cnty. of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003); *Cherosky*, 330 F.3d at 1246 n. 3).

With respect to the systematic branch, originally, it "allowed the plaintiff to recover for acts that occurred prior to the limitations period as long as (1) those acts were conducted pursuant to a policy or practice that remained in effect within the statute of limitations period and (2) the plaintiff remained subject to or susceptible to the policy within the limitations period." *Id*. (citations omitted).

The Ninth Circuit has applied *Morgan* "to abrogate the systematic branch of the continuing violations doctrine as well." *Id.* In *Lyons v. England*, 307 F.3d 1092, 1107 (9th Cir. 2002), the Ninth Circuit relied on *Morgan* to conclude that a plaintiff's "assertion that [a] series of discrete acts flows from a company-wide, or systematic, discriminatory practice will not succeed in establishing the employer's liability for acts occurring outside the limitations period." In *Cherosky*, the court concluded that "[t]he allegation that … discrete acts were undertaken pursuant to a discriminatory policy does not extend the statutory limitations period." *Cherosky*, 330 F.3d at 1247.

> Thus, after *Morgan*, little remains of the continuing violations doctrine. Except for a limited exception for hostile work environment claims—not at issue here—the serial acts branch is virtually non-existent. Moreover, while we have left room for the systematic branch to apply to class-wide pattern-or-practice claims, … we have consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time barred.

*Id.* at 748.

Here, Plaintiff's complaint does not involve a hostile work environment claim; therefore, the serial acts branch of the continuing violations doctrine does not apply. In addition, Plaintiff does not include a class-wide pattern-or-practice claim; therefore, the systematic branch does not apply. As a result, the continuing violations doctrine does not apply here.

In sum, to the extent Plaintiff's claims are based on conduct that occurred before January 6, 2018, they are barred by the statute of limitations. The court will now address Plaintiff's claims to the extent they are based on conduct that occurred on or after January 6, 2018.

**B. Eighth Amendment**

    **1. Eighth Amendment Standard**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials

provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *Stewart v. Aranas,* 32 F.4th 1192, 1195(9th Cir. 2022) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985)); *McGuckin*, 974 F.2d at 1060.

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

**2. Sandoval, Baca, Dzurenda, Dr. Aranas, and Laxalt**

Plaintiff alleges that in 2016 or 2017, Vargas told these Defendants that NNCC had a policy to deny preventive dental care, and they failed to take any action.

Defendants argue that these Defendants were not involved in dental care provided to Plaintiff. (Plaintiff admits they were not involved in his dental care 7 at 11-17). Furthermore, they assert there is no *evidence* to support Plaintiff's allegation that Vargas told these Defendants that NNCC had created a policy to deny preventive care to inmates.

In his response, Plaintiff provides no evidence to create a genuine dispute of material fact as to whether Vargas told these Defendants of a policy at NNCC to deny inmates preventive care. Plaintiff's allegation is based solely on his speculation: in "about 2016 or 2017 Defendant

Vargas confined to me she complained (presumably the Board of Prison Commissioners) … ." (ECF No. 7 at 12 n. 2.) Therefore, summary judgment should be granted in favor of Sandoval, Baca, Dzurenda, Dr. Aranas, and Laxalt.

**3. Vargas and Benson**

Defendants argue that there is no evidence Plaintiff received substandard dental care, pointing out that between 2015 and 2020, Plaintiff had at least 17 dental visits. They contend that Plaintiff was scheduled for a dental appointment after each medical kite and grievance he submitted seeking dental care. They assert that Plaintiff's claim boils down to a disagreement about the treatment plan, but he has not shown the plan was medically unacceptable under the circumstances or in conscious disregard of an excessive risk to Plaintiff's health. They assert that he had a history of a lack of oral hygiene, and when he did seek dental attention, he was placed on the appropriate waiting list and was seen by dental staff when availability arose. In addition, they argue, relying on *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014), that Plaintiff was treated in accordance with the resources they had available and within the policy framework they had to operate.

Defendants do not argue that Plaintiff did not suffer from a serious medical need. Instead, Defendants contend they were not deliberately indifferent because Plaintiff received adequate dental treatment.

First, the fact that Plaintiff was seen, and even the fact that he was seen 17 times over a period of 5 years does not, in and of itself, demonstrate a lack of deliberate indifference. *See Edmo v. Corizon*, 935 F.3d 757, 793 (9th Cir. 2019) (citation omitted) ("The provision of some medical treatment, even extensive treatment over a period of years, does not immunize officials from the Eighth Amendment's requirements."). Defendants argue that when Plaintiff was seen,

he received evaluation and/or treatment, but their argument is devoid of any meaningful discussion of what treatment he received and why it was sufficient, particularly in light of Plaintiff's continued kites of dental issues and attendant pain. It is Defendants' burden to demonstrate the absence of a genuine dispute of material fact. Merely concluding that Plaintiff's treatment was adequate because he was seen by dentists multiple times over the years is insufficient.

Importantly, Plaintiff's dental records appear to reflect that the majority of Plaintiff's dental appointments were with Dr. Petersen. In fact, it appears that he only saw Dr. Petersen up until his appointment on September 18, 2019. (ECF No. 145-1.) Dr. Petersen (now deceased) has been dismissed from this action without prejudice, and Dr. Benson cannot be held liable for Dr. Petersen's alleged failure to provide adequate dental care during this time period. It is unclear, however, whether the appointments from September 18, 2019, and beyond were with Dr. Benson, or another dental provider at NNCC. Nor can the court sufficiently read the notes regarding the examinations from September 18, 2019, onward, to determine whether there is any basis for a deliberate indifference claim against Dr. Benson (if he was the providing dentist). Dr. Benson may well be entitled to summary judgment either because he did not provide dental care to Plaintiff during the applicable time period, or if he did, he provided adequate care, but Defendants have not sufficiently made this argument.

With respect to Vargas, Plaintiff alleges she was a dental assistant at NNCC. Neither Defendants nor Plaintiff address the role Vargas played, if any, in Plaintiff's dental care during the relevant time period, *i.e.*, whether she actually provided any dental care to Plaintiff as a dental assistant or whether she responded to his kites, and if so, which ones. While Vargas might

be entitled to summary judgment for a lack of participation or the absence of conduct amounting to deliberate indifference, Defendants have not made a sufficient argument.

Finally, Defendants attempt to invoke *Peralta v. Dillard*. The issue presented in *Peralta* was whether prison officials sued for money damages can raise lack of available resources as a defense. *Peralta,* 744 F.3d at 1081. This issue was raised in the context of a jury instruction provided at trial. Peralta alleged deliberate indifference due to a delay in providing dental care. The California prison where Peralta was housed had three out of four dentists and dental hygienists. State policy required one dentist for every 950 inmates, but the prison had closer to one dentist for roughly every 2,000 inmates. *Id*.

The Ninth Circuit held that "[l]ack of resources is not a defense to a claim for *prospective relief* because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations." *Id*. at 1083 (citations omitted, emphasis added). With respect to damages, however, "[w]hat resources were available is highly relevant because they define the spectrum of choices that officials had at their disposal." *Id*. Thus, when a plaintiff seeks damages, the jury can "consider the constraints under which an individual doctor operates in determining whether he is liable for money damages because he was deliberately indifferent[.]" *Id*.

Here, Defendants attempt to invoke *Peralta* without providing any specific evidence to demonstrate its application, *i.e.*, what resources were at their disposal. Moreover, *Peralta* involved a question of fact for the jury to determine whether, given the constraints faced by the prison official, he acted wantonly in denying Peralta care. It does not provide a basis to grant summary judgment.

In sum, summary judgment should be denied as to Dr. Benson and Vargas (except insofar as Plaintiff's claims are barred by the statute of limitations with respect to Vargas[2]). However, Dr. Benson and Vargas should be allowed to seek leave of court to file a successive motion for summary judgment, if legally and factually appropriate.

**4. Dr. Minev, Daniels, Sisolak, Russel and Ford**

The screening order found there were no allegations that these Defendants knew about the alleged dental policy to refuse preventive care to inmates; however, the court allowed the claim for deliberate indifference to proceed against these Defendants for injunctive relief to change the policy. (ECF No. 6 at 8.)

The policy-based claim was asserted against Sandoval, Baca, Dzurenda, Dr. Aranas, and Laxalt, and the court has recommended that summary judgment be granted in these Defendants' favor as to this claim. Therefore, there is no basis for a claim for injunctive relief against Dr. Minev, Daniels, Sisolak, and Ford, and summary judgment should be granted in their favor.

**C. Qualified Immunity**

Defendants argue it was not clearly established that any action or policy choice was unconstitutional because previous cases have ruled that differences of medical opinion cannot sustain an Eighth Amendment deliberate indifference claim. In addition, they argue that they are entitled to qualified immunity for relying on Medical Directives 408 and 631, which have not been deemed unconstitutional.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time

---

[2] It is undisputed Dr. Benson did not provide treatment to Plaintiff during the period of time that the court has found to be barred by the statute of limitations.

of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

Neither Dr. Benson's nor Vargas's role in Plaintiff's dental care during the relevant time period is clear on the record before the court; therefore, the court cannot determine whether they violated Plaintiff's constitutional rights. Moreover, it has been well established that "'deny[ing], delay[ing], or intentionally interfere[ing] with medical treatment can violate the constitution.'" *Stewart v. Aranas,* 32 F.4th 1192, 1195 (9th Cir. 2022) (quoting *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014)). At this juncture, Defendants have not demonstrated they are entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' motion for summary judgment (ECF No. 143) as follows:

(1) Summary judgment should be **GRANTED** to the extent Plaintiff's claims are based on conduct that occurred before January 6, 2018, as such claims are barred by the statute of limitations;

(2) Summary judgment should be **GRANTED** in favor of Sandoval, Baca, Dzurenda, Dr. Aranas and Laxalt;

(3) Summary judgment should be **DENIED** as to Dr. Benson and Vargas (except insofar as Plaintiff's claims are barred by the statute of limitations with respect to Vargas); however, Dr. Benson and Vargas may seek leave of court to file a successive motion for summary judgment if legally and factually appropriate;

(4) Summary judgment should be **GRANTED** as to the claim for injunctive relief against Dr. Minev, Daniels, Sisolak, and Ford; and

(5) Defendants' motion should be denied insofar as they argue they are entitled to qualified immunity.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 30, 2022

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Craig S. Denney
　　　　　　　　　　　　　　　　　　United States Magistrate Judge