**LAGOMARSINO LAW**
ANDRE M. LAGOMARSINO, ESQ. (#6711)
TAYLOR N. JORGENSEN, ESQ. (#16259)
CRISTINA P. VALENTINE, ESQ. (#16440)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
AML@lagomarsinolaw.com
taylor@lagomarsinolaw.com
cristina@lagomarsinolaw.com
*Pro Bono Attorneys for Plaintiff Pattison*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DANTE H. PATTISON,

Plaintiff,

vs.

BRIAN SANDOVAL, et al,

Defendants.

Case No.:    3:20-cv-00287-MMD-CSD

**JOINT STIPULATION TO RE-OPEN DISCOVERY ON A LIMITED BASIS**

**(FIRST REQUEST)**

IT IS HEREBY STIPULATED AND AGREED between all Parties, by and through their undersigned attorneys, that there is good cause for discovery in this matter to be re-opened on a limited basis and, thus, all remaining deadlines extended accordingly. The parties submit this *Joint Stipulation and Order to Re-Open Discovery on a Limited Basis (First Request)* in accordance with Fed. R. Civ. P. 16(b)(4), Fed. R. Civ. P. 6(b)(1)(B), Local Rule ("LR") 26-3, and LR IA 6-1, and hereby jointly request entry of an Order reopening discovery on a limited basis and for a limited period, and amending the scheduling order as outlined herein.

## I.    PROCEDURAL BACKGROUND

Discovery in this case closed on May 4, 2022. (ECF No. 127). Following the close of discovery, Defendants filed dispositive motion briefing (ECF Nos. 143, 181, 184), which the Court

Page 1 of 12

has since ruled on. (*See* ECF Nos. 205, 240). The Court also granted Plaintiff's request to appoint pro bono counsel. (*See* ECF No. 240 at 13).

On June 9, 2023, Defendants appealed the Court's dispositive motion order to the Ninth Circuit Court of Appeals on the basis of the Court's denial of qualified immunity. (*See* ECF No. 251). A few days later, on June 15, 2023, pro bono counsel appointed for Plaintiff filed their Notice of Appearance. (ECF No. 259). Thereafter, the parties' counsel litigated the Defendants' appeal in front of the Ninth Circuit Court of Appeals, resulting in dismissal on September 2, 2025. (ECF Nos. 273).

On October 14, 2025, the Court issued an Order on Mandate (ECF No. 275) referring the case to Magistrate Judge Denney to conduct a settlement conference. That settlement conference was then scheduled for February 11, 2026 (ECF No. 276). After the matter failed to resolve, Plaintiff's pro bono counsel, Cristina P. Valentine, Esq., reached out to Defendants' counsel, Douglas R. Rands, Esq., regarding Plaintiff's intent to re-open discovery; a telephonic meet and confer was conducted on February 18, 2026. At that time, the parties' counsel discussed Plaintiff's intent to file a Motion to Re-Open Discovery on a Limited Basis and agreed to alternatively file this joint stipulation outlining the specific discovery to be re-opened.

## II.   DISCOVERY COMPLETED TO DATE AND THE REASONS WHY CERTAIN DISCOVERY WAS NOT COMPLETED

For the entirety of the discovery period in this case to date, Plaintiff was representing himself pro se, without the assistance of legal counsel and with only those resources available to him as an incarcerated individual. Despite his diligence, his status as an incarcerated pro se litigant lacking legal training[1] severely hindered his ability to secure evidence he would likely have been able to secure

---

[1] For example, on May 11, 2021, Plaintiff asked to Open Discovery not understanding the usual course of litigation. (*See* ECF Nos. 12, 14, 17, and 18) (demonstrating his request was premature). Later, on July 27, 2021, the parties were able to proceed with discovery for the first time. (ECF No. 23).

with the assistance of legal counsel. Significant written discovery was attempted by Plaintiff. Similarly, he attempted to secure resources to conduct depositions and recordings of evidence. The vast majority of Plaintiff's discovery attempts were unsuccessful. Therefore, the parties provide the Court with a description of Plaintiff's discovery attempts, along with a description of what discovery was or should have been produced (and was presumably completed), as well as a description of what discovery is still needed. Now that Plaintiff has pro bono counsel representing him, there is good cause to re-open discovery and allow Plaintiff to secure the discovery he was unable to secure due to his lack of legal training and status as an incarcerated individual.

**A.    Plaintiff could not access visual and audio recording devices as an incarcerated individual and no imaging of his injuries has otherwise been disclosed.**

On July 29, 2021, Plaintiff attempted to request a camera to allow him to document his dental injuries (ECF No. 22) and a tape-recording device to use for depositions and to record witness testimony at his own expense, indicating he planned to depose Defendant Peterson and an NDOC witness regarding policies, practices, and customs (*i.e.*, a 30(b)(6) witness). (*See* ECF No. 26). Shortly thereafter, on August 11, 2021, Plaintiff also asked for permission to depose an inmate witness, stating to the Court, "I have no idea what I'm doing but I'm doing my best." (ECF No. 27). Defendants opposed Plaintiff's requests for a camera and for a tape-recording device, *inter alia*, on August 12, 2021. (*See* ECF No. 28).

On August 16, 2021, the Court denied Plaintiff's request for a camera, agreeing "there is a clear penological interest in not allowing inmates to possess cameras within NDOC institutions" and denied Plaintiff's Motion (ECF No. 22) in that respect. (*See* ECF No. 34). However, the Court "direct[ed] Defendants' counsel to explore with NDOC the possibility of obtaining photographs of Plaintiff's teeth/mouth… [and to] report back to the court within ten (10) days of the date of this order whether this discovery can be – or has been – undertaken." (ECF No. 34 at 3). Two days later, on

August 18, 2021, the Court also denied Plaintiff's request for a tape-recording device, citing Plaintiff's "status as an incarcerated inmate" as reason for the denial and severe restrictions, and non-compliance with FRCP 30. (ECF No. 36).

In accordance with the Court's Order, on August 26, 2021, the Defendants filed a *Notice Regarding the Possibility of Photographic Evidence Pursuant to ECF No. 34*, which provided that NDOC had the ability to take photographs of Plaintiff's teeth and "that x-ray photographs of Plaintiff's teeth have been taken as part of his dental care and are being provided to Plaintiff during this Discovery process." (*See* ECF No. 48). The following day, on August 27, 2021, the Court ordered that "Defendants shall coordinate with Plaintiff a mutually convenient time to take photographs of Plaintiff's mouth/teeth" since it appeared that "the photographs secured in this fashion would be of equal quality to any Plaintiff might try to obtain himself with a camera bought from a vendor." (ECF No. 50).

### i.    *Plaintiff has not received imaging, recordings, nor other visual depictions of his injuries.*

To date, Plaintiff has not received, or does not have copies of, imaging or other visual recordings of his teeth and/or mouth. The parties agree there is good cause to re-open discovery: (a) to allow for the proper and complete production of all dental imaging already in existence and in the possession, custody, or control of Defendants; (b) to obtain and produce updated imaging of Plaintiff's teeth, mouth, and related injuries;[2] and (c) to the extent the native format of imaging is not in the possession, custody, or control of Defendants, to submit third-party subpoena(s) for the purpose of securing those documents. Visual depictions or imaging of Plaintiff's injuries (both past and

---

[2] The parties agree to work in good faith to coordinate the process for obtaining updated imaging in a manner that is mutually agreeable and sufficient to satisfy any related evidentiary standards.

present) will enable expert witness(es) disclosed by the parties to opine on Plaintiff's injuries in an objective manner and, thus, in a manner that is beneficial to the jury.

**B.      The specialized nature of material topics in this lawsuit require expert witness testimony but the parties did not disclose initial or rebuttal experts.**

Due to Plaintiff's status as an incarcerated individual, limited access to funds, and lack of legal training, Plaintiff was unable to, and did not, disclose expert witnesses. The Court's scheduling order, further, did not identify expert deadlines. (*See* ECF No. 18). Consequently, the parties did not disclose experts.

### i.      *The parties agree expert witnesses are needed in this case*

Due to the medical nature of this case and the particularities of the prison environment, a jury would benefit from expert witnesses who can opine on such topics—topics lay witnesses do not otherwise have the requisite knowledge to understand. This includes an independent expert selected by Plaintiff's counsel to conduct an in-person evaluation of Plaintiff's dental health.[3] Thus, there is good cause to re-open discovery on the limited basis of allowing the parties to disclose initial and rebuttal experts.

The deadlines for expert disclosures must be scheduled in a manner that allows the parties sufficient time to secure all necessary imaging records for the expert(s) to examine when forming their opinions, as outlined above, and to coordinate an in-person evaluation of Plaintiff. Therefore, the proposed scheduling order provided herein accounts for this necessary time allowance.

…

…

---

[3] The parties agree to work in good faith to coordinate such evaluation and that legal counsel for the parties will not be present at the evaluation.

**C.     Plaintiff's lack of legal training and limited access to resources hindered his ability to effectively secure and authenticate documents to support his claims and complicated the discovery period to his detriment.**

On September 3, 2021, Defendants filed a Motion for Protective Order regarding the volume of discovery served on Defendants Sullivan and Peterson. (*See* ECF No. 56 and Exhibits A-H attached thereto). Following a prompt stay on discovery (ECF No. 58), a related hearing was conducted on October 14, 2021. (ECF No. 70). Among other things, the Court attempted to clarify relevant discovery rules to Plaintiff and ordered Defendants to endeavor to produce the following materials: (i) all grievances related to dental care made by Mr. Pattison from 2016 to the present; (ii) all e-mails related to dental care of Mr. Pattison from Defendant Sullivan from 2016 to the present; (iii) all NDOC e-mails related to Mr. Pattison from 2016 to the present (beyond those involving Defendant Sullivan); and (iv) all statistical reports pursuant to Administrative Regulations (AR) 602.01. (*See* ECF No. 70 at 2-3). If "unable to provide the materials identified[,]" Defendants were directed to "file a notice to that effect"; to the extent discovery needed to ensue thereafter, the Court limited Plaintiff to twenty-five discovery requests each, "including subparts, for requests for production of documents, interrogatories, and admissions" with "[a]ny commencing discovery [ ] stayed until Defendants produced the materials discussed [ ] and [until] Plaintiff [ ] had time to review such materials." (ECF No. 70 at 3).

On January 31, 2022, Defendants provided notice regarding their compliance with the October 14 Order, ECF No. 70. (*See* ECF No. 81). Therein, Defendants stated, "they disclosed various documents on January 25, 2022 as part of their Initial Disclosures" and "sent some of the items the Court outlined in its October 14, 2021 Order informally to Pattison." (ECF No. 81 at 3). The Defendants further stated that they were unable to produce all of the documents, specifically identifying the following items: (1) all e-mails related to dental care of Mr. Pattison from Defendant

Sullivan from 2016 to the present; and (2) all NDOC e-mails related to Mr. Pattison from 2016 to present (beyond those involving Defendant Sullivan), noting that the productions were either "subject to protection pursuant to the attorney/client privilege and work product doctrine" or too voluminous. (ECF No. 81 at 3—4). Defendants "request[ed] the Court's guidance in attempting to narrow the search and further pair down the number of e-mails." (ECF No. 81 at 4) (describing how NDOC initially located more than 273,000 emails related to Mr. Pattison given his incarceration dating back to 2005, and how, after narrowing the search terms to inmate name, number, and "dental" an excess of 5,000 emails were identified).

On February 2, 2022, The Court issued an Order concerning ECF No. 81. (*See* ECF No. 83). Therein, the Court presumed that "Defendants produced to Plaintiff the other two categories of documents: all of his grievances from 2016 to present, and all statistical reports regarding dental pursuant to AR 602.01." (ECF No. 83 at 4 fn.3). The Court also ordered Defendants to produce a privilege log to Plaintiff in accordance with the Federal Rules of Civil Procedure for all emails it claimed were privileged and were, thus, not produced. Rather than assisting the Defendants in further limiting the scope of emails requested, the Court permitted Defendants to withhold all e-mails on the basis of the written discovery request being overbroad and not proportional to the needs of the case. (ECF No. 83 at 5).

> ***i.   The grievances from 2016 to present, all statistical reports regarding dental, and Defendants' privilege logs have not been produced and, thus, need to be produced.***

To date, all grievances from 2016 to present, all statistical reports regarding dental pursuant to AR 602.01, and the privilege logs required by way of Defendants withholding certain e-mails and/or documents, have not been produced or Plaintiff does not have copies of these documents. Given the Court's prior direction that said documents be produced to Plaintiff during the discovery

period, or otherwise presuming they had been, <u>the parties agree there is good cause to re-open</u> <u>discovery to allow for those documents to be produced in their entirety</u>.

<u>The parties further agree that any subsequent discovery related to those productions should be</u> <u>allowed</u> during the limited discovery period given that the parties would have been able to engage in such discovery had those documents been produced and reviewed during the initial discovery period as expected, before the close of discovery in this case.

### ii. *Plaintiff's status as a pro se litigant prevented effective good-faith efforts to limit the e-mail production.*

In their notice to the Court on January 31, 2022 (discussed above), Defendants requested the Court's assistance in narrowing search terms. However, rather than provide a narrowed category, the Court simply permitted Defendants to withhold all e-mails on the basis of the written discovery request being overbroad and not proportional to the needs of the case. Due to Plaintiff's lack of legal training, Plaintiff was unable to articulate the relevance and proportionality of the e-mails requested and, further, was unable to meet and confer effectively with Defendants' counsel to resolve the issue without Court intervention.

Determining how to narrow search terms is a discovery issue ordinarily handled by the parties' counsel through the meet and confer process, during which search terms could be narrowed in an effective manner to ensure the request is not overly burdensome. To the extent the parties disagree about the relevance and proportionality of the discovery altogether or could not come to an agreement about how to appropriately narrow the search terms, legal counsel is better equipped to communicate the relevance of the discovery to Court and, thus, show why the request is proportional. Consequently, had Plaintiff Pattison been represented by counsel back in January 2022, to the extent the parties were unable to agree on narrowed search terms, Plaintiff's counsel would have been able to explain how narrowed search terms provide e-mails that are proportional to Plaintiff's claims (e.g., where there is

no electronic health management system and no record of chain-of-custody for the single set of paper records stored by NDOC, native format e-mails provide a more reliable form of evidence). Defendants themselves acknowledged that searching Plaintiff's name, ID number, and the term "dental" produced over 5,000 documents, demonstrating the high likelihood that providers discussed Pattison's dental needs through e-mail; copies of which are not maintained in inmate medical or dental files.

Accordingly, the parties agree there is good cause to re-open discovery for the purpose of allowing the parties to meet and confer on the issue of narrowed search terms, which Defendants previously asked the Court to assist with. This production will focus on e-mails related to scheduling appointments and discussing dental care for Pattison, not privileged information.

### iii. Initial and Supplemental Disclosures were not produced by the parties.

Though the Defendants mention that initial disclosures were produced, Plaintiff does not have a copy of any initial or supplemental disclosures or documents produced therewith. Plaintiff's counsel is only aware of documents attached to motions as exhibits and is otherwise unclear as to whether even those exhibits represent the complete and accurate form of the documents reflected therein. Due to his status as an incarcerated inmate, restrictions on documents he is allowed to keep on his person, and periodic confiscation or destruction of documents in his possession, it appears that Plaintiff Pattison is also not in possession of all disclosures.

To ensure the parties are aware of exactly which witnesses may be called at trial, and which documents the parties may use at trial, the parties agree there is good cause to re-open discovery to allow for production of updated disclosures, inclusive of all witnesses, documents, damages, and insurance information, as required under the federal rules. The parties agree Defendants' updated disclosures should include complete and accurate copies of all documents previously produced or disclosed to Plaintiff in this case and, to the extent not included therewith, (a) complete and accurate

copies of all NDOC dental records relating to Plaintiff's dental care, treatment, or need for treatment;[4] (b) complete and accurate copies of all medical/dental directives (and/or their equivalent) related to dental care at the facility where Pattison resided during the period of 2016 through the present date; and (c) complete and accurate copies of all records reflecting cancellations, reschedules, or clinic closures impacting Plaintiff's dental appointments, triage records, appointment waitlists/scheduling entries for Plaintiff's dental visits. To the extent additional documents are discovered during the limited discovery period, such documents should be supplemented promptly.

### iv.    Documents produced may not be authenticated

The parties agree that, to the extent documents produced have not been authenticated, the parties may engage in discovery for the purpose of authenticating those documents. There is good cause to reopen discovery to authenticate documents because authentication will decrease the number of objections at trial, which is a benefit to both parties.

**D.    No depositions have been conducted in the case.**

As described herein, Plaintiff's ability to conduct effective discovery was hindered by his status as an incarcerated individual and lack of legal training. Ordinarily, depositions of parties and experts are conducted when parties are effectively represented by counsel. Therefore, the parties agree to allow depositions of the following limited categories of individuals, which will be conducted in-person and may be videotaped unless otherwise agreed by the parties: named parties and/or individuals who conducted a dental visit and/or provided dental care to Plaintiff; one 30(b)(6)

---

[4] including, but not limited to, progress notes, provider/practitioner/physician orders, screenings, intake notes, transfer records, test/lab results, radiology/interpretive reports, native imaging records, recordings/depictions of Plaintiff's teeth and/or mouth, radiology logs, medication orders, medication administration records, notes, kites, responses, memos, fax transmission verifications, referral requests, special orders, vital charts, 3rd party records and related records requests, dental charts; extraction records; procedure records; recommendations; treatment plans; appointment documentation

deposition regarding policies, practices, and customs as Plaintiff attempted, but was unable to, conduct (*see* ECF No. 26); and experts disclosed by a party in this case.

**III.     SUMMARY OF LIMITED DISCOVERY AGREED TO HEREIN**

As provided above, there is good cause for discovery in this case to be re-opened on a limited basis for the purpose of securing the following discovery:

1.     Production of all existing dental imaging, updated imaging of Plaintiff's injuries, and issuance of any third-party subpoenas to secure imaging records in their native format if needed;

2.     Production of all previously ordered grievances related to dental care filed by the Plaintiff from 2016 to the present, all statistical reports regarding dental care pursuant to AR 602.01, and all privilege logs for emails or documents withheld by Defendants;

3.     Production of all initial and supplemental disclosures, as described in sub-section C above;

4.     Production of e-mails related to Pattison's dental care, narrowed by the parties' good-faith efforts to meet and confer;

5.     Discovery necessary to authenticate documents produced by the parties; and

6.     Depositions of: (i) named parties in the lawsuit and/or individuals who conducted dental visits or provided dental care to the Plaintiff, (ii) one 30(b)(6) deposition regarding policies, practices, and customs, and (iii) experts disclosed by the parties.

…

…

…

…

…

…

## IV.    PROPOSED SCHEDULE FOR COMPLETING ALL REMAINING DISCOVERY

|  | Current | Proposed |
|---|---|---|
| Deadline for initial expert disclosures | 01/16/26 | **Monday, July 27, 2026**[5] |
| Deadline for rebuttal expert disclosures | 02/17/26 | **Monday, August 24, 2026** |
| Discovery cut-off | 05/04/22 | **Monday, September 21, 2026** |
| Pre-trial order | 03/13/26 | **Monday, October 26, 2026** |

### IT IS SO STIPULATED AND AGREED.

DATED this 6th day of March, 2026.

**LAGOMARSINO LAW**

 */s/ Cristina P. Valentine*
ANDRE M. LAGOMARSINO, ESQ. (#6711)
TAYLOR N. JORGENSEN, ESQ. (#16259)
CRISTINA P. VALENTINE, ESQ. (#16440)
3005 W. Horizon Ridge Pkwy., #241
Henderson, Nevada 89052
Telephone: (702) 383-2864
*Pro Bono Attorneys for Plaintiff Pattison*

DATED this 6th day of March, 2026.

**STATE OF NEVADA,
ATTORNEY GENERAL'S OFFICE**

 */s/ Douglas R. Rands*
DOUGLAS R. RANDS, ESQ. (#3572)
Senior Deputy Attorney General
100 N. Carson Street,
Carson City, NV 89701
*Attorney for Defendants*

### IT IS SO ORDERED.

_____
UNITED STATES MAGISTRATE JUDGE

**DATED:**  March 9, 2026

---

[5] This deadline falls on July 26, 2026, which is a Sunday. As a result, this deadline extends to the next court day of Monday July 27, by operation of FRCP 6.